UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
----------------------------------------------------------------

**UNITED STATES OF AMERICA,**

                                        Case No. 14-CR-150

                        Plaintiff,

                                        Milwaukee, Wisconsin

        vs.

                                        April 30, 2015

**BILLY J. ROBINSON, JR.,**

                        Defendant.
----------------------------------------------------------------

### TRANSCRIPT OF SENTENCING

BEFORE THE **HONORABLE RUDOLPH T. RANDA,**
UNITED STATES DISTRICT JUDGE


### A P P E A R A N C E S

For the Plaintiff:              United States Attorney
                                By: **Mr. William J. Lipscomb**
                                Assistant U.S. Attorney
                                530, U.S. Courthouse
                                517 E. Wisconsin Ave.
                                Milwaukee, WI   53202

For the Defendant:              Federal Defender Services
                                By: **Mr. Craig W. Albee**
                                Attorney at Law
                                517 E. Wisconsin Avenue
                                Milwaukee, WI, 53202


REPORTED BY:                    HEIDI J. TRAPP
                                Federal Official Court Reporter
                                310, U.S. Courthouse
                                517 East Wisconsin Avenue
                                Milwaukee, Wisconsin 53202
                                (414) 297-3074


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

1             **TRANSCRIPT OF PROCEEDINGS**

2             THE CLERK:  Case Number 14-CR-150, United States of

3    America vs. Billy Robinson.  Called for a sentencing hearing.

4    May I have the appearances, please.  First for the Government.

5             MR. LIPSCOMB:  Good morning, Your Honor.  Assistant

6    United States Attorney William J. Lipscomb on behalf of the

7    United States.

8             THE COURT:  Good morning.

9             MR. DRAGOLOVICH:  Daniel Dragolovich for U.S.

10   Probation.  Good morning.

11            THE COURT:  Good morning.

12            MR. ALBEE:  Good morning, Your Honor.  Mr. Robinson

13   appears in person and with Craig Albee.

14            THE COURT:  Good morning.  The case is here for

15   sentencing.  The Court has read the presentence report.  The

16   Court has received a letter yesterday, and from defense also.

17   The Court has read that.  It's read all the other information

18   related to this hearing, and the Court is prepared to proceed.

19   Before the Court does, it must inquire of you, Mr. Robinson, as

20   to whether or not you've had the same opportunity.  So I ask

21   you, have you gone over this presentence report with your

22   attorney, Mr. Albee?

23            THE DEFENDANT:  Yes, sir.

24            THE COURT:  Do you or Mr. Albee have any objections to

25   any of the factual statements in the report?

1      MR. ALBEE:  Judge, we have nothing beyond what we

2 included in our letter to the Probation Office.

3      THE COURT:  All right.  Does the Government have any

4 objections to any of the factual statements in the report?

5      MR. LIPSCOMB:  No, Judge.

6      THE COURT:  Okay.  Well, then the Court will take the

7 range of sentence established by the guidelines and integrate

8 that into the factors under 18 United States Code Section 3553,

9 which directs the Court to look at the same things that the

10 guidelines look at, and then render a disposition not more than

11 necessary to achieve what are the goals in both.  The Court will

12 listen to the Government's recommendation first, then Mr. Albee.

13 And then, Mr. Robinson, you get the last word relative to your

14 right of allocution.  You get to talk last.  Is the Government

15 going to make a recommendation here?

16      MR. LIPSCOMB:  Yes, Judge.  Going to sort of back up,

17 though.  You know, the Defendant did submit two letters,

18 ultimately.  The first letter to the Probation Office dated

19 April 17th, which is an objection to the facts in the

20 presentence report, which is dealt with in the addendum filed on

21 April 23rd of 2015.  And that deals with the firearm

22 enhancement.  The Defendant objects to that -- application of

23 that enhancement.  And if the Court were to accept that

24 objection, the guideline range would be reduced to 77 to

25 96 months, which is significant.  And the Government actually in

1    that did not oppose that objection.  I think it's appropriate.

2    We're not really able to prove the firearm involvement with

3    Mr. Robinson, as we could with the other Defendants.

4           THE COURT:  All right.  Well, I suppose the Court

5    should have commented on the fact that because the Government

6    doesn't think it can prove that, that the Court is not going to

7    tag -- or credit Mr. Robinson with that.  So we will proceed on

8    that range that's established, 77 to 96 months, I believe.

9           MR. LIPSCOMB:  Thank you, Judge.  Okay.  So then the

10   Government's recommendation, Judge, is that the Court -- it's

11   really kind of reflected in the Defendant's letter.  What I'm

12   concerned about in this case in recommending a sentence not more

13   than 5 years is that there really be some parity with the other

14   Defendants in the case.  And I know that Mr. Robinson presents a

15   different profile, particularly given his extensive criminal

16   history.  But the counterweight to that is his limited time

17   involved in this offense.  And so I think about 60 months, not

18   more than that, is about where it would be appropriate to come

19   down with a sentence that was not greater than necessary to

20   achieve the purposes of sentencing.

21          In that regard, you know, I'm not diminishing the

22   seriousness of the offense that Mr. Robinson was involved in.

23   Though he was involved in it for a short period of time, he was

24   assisting Mr. Trivon Carter in a significant heroin trafficking

25   enterprise.  And as the facts would show, going down to Chicago

1  to help him pick up heroin, and then also to make at least one

2  delivery that we have through a C.I. here in the Milwaukee area.

3  So, you know, if that were a one time deal for a person, you

4  know, that might not call for a sentence even of 60 months.  But

5  Mr. Robinson's history is really terrible.  And, you know, sort

6  of a pickle as to what the Court should do with him,

7  particularly now that he is -- what is he?  35 years of age, I

8  think?  Right.  35 years of age.  And you'd hope done with the

9  foolishness and the knuckle-headness, and the street association

10 of his past.

11      He's got kind of a classic street dealer criminal

12 history starting at the age of 14 with some thefts, and

13 possession of a stolen automobile, and possession of cocaine,

14 and battery, possession of T.H.C.  Another possession charge out

15 of Chicago, moving on to more serious felony conduct in 2002.

16 Two Milwaukee County cases where we have manufacture or delivery

17 of cocaine.  He gets significant prison time for those offenses,

18 but not too long after getting out has essentially a

19 distribution of heroin in Chicago in 2012.  And then fast

20 forward to our offense here in 2014.

21      So he's not gotten the message yet.  And the reaction

22 could be, well, have to ratchet this up even beyond what the

23 prior sentences were.  That may or may not be right, but he's

24 also gotten older, too.  And I think the difference in a 4 year

25 or 5 year sentence for a guy who's 35 is different than it would

1  be if he were 22 years old.  Five years is a greater period of

2  time for a person who's 35 years old and has seen what prison

3  is.

4          So I think that's kind of in the range of what's

5  appropriate here.  But I can't tell you -- and I had this

6  conversation with Mr. Albee -- from the public standpoint, how

7  much time is necessary to get Mr. Robinson to stop dealing dope.

8  I don't know what that is.  We know that when he's incarcerated

9  he's not dealing drugs on the street.  But we want him to stop.

10  We want him to do something productive.  And I think that 4 to 5

11  year range is the minimum that's necessary to make that happen

12  and is, I think, sufficient.

13          THE COURT:  All right.  Mr. Albee?

14          MR. ALBEE:  Judge, there's not much difference between

15  the recommendations of the parties here.  Mr. Lipscomb has

16  suggested 4 to 5 year range.  We're asking the Court to impose a

17  sentence 6 months below that range.  And Mr. Lipscomb and I are

18  pretty well in agreement as to what the important considerations

19  are here, and what needs to be balanced.  I do think a

20  3-and-a-half year sentence is sufficient but not greater than

21  necessary under all the circumstances when we look at some of

22  the finer points, some of the details here in both the role in

23  the offense, and some of the criminal history information.

24          In comparison to his co-Defendants, at least the ones

25  who are -- the people who are prosecuted, I guess there are

1  other people who probably were part of Mr. Carter's organization

2  that had different roles at different times that Mr. Carter

3  used.  Mr. Robinson was involved for about 2 months, as opposed

4  to the 2-plus years that the others were involved.  And for

5  those 2 months Mr. Robinson was a bit player here.  He had no

6  leadership or supervisory role.  He didn't make any decisions,

7  even about how things would take place.  Mr. Carter really did

8  everything.  Billy didn't have his own customers.  He didn't --

9  Mr. Carter said he didn't help even bag any of the heroin.  He

10 never had a gun.  He was simply told, you know, what to do on

11 occasion by Mr. Carter.  And even the circumstance under which

12 Mr. Robinson came to be prosecuted the sale of the half gram of

13 heroin to an informant -- in looking at the discovery, there was

14 an evidentiary hearing on this matter.  Mr. Carter set up that

15 deal, and then had his brother actively doing some -- what the

16 Police describe as counter-surveillance, and then sent

17 Mr. Robinson to deliver the drugs.  And I suspect Mr. Carter

18 thought that he was -- that potentially this was somebody

19 working for law enforcement, and so he sent Mr. Robinson.

20        Mr. Robinson got involved here.  Mr. Carter was his

21 cousin.  He started hanging out with him.  Enjoyed living

22 vicariously -- Mr. Carter was doing well.  Living a much higher

23 lifestyle than Billy could possibly afford.  He made some very

24 bad choices in terms of hanging out with Mr. Carter, and of

25 helping him out on some occasions.  It's obviously a serious

1    offense.  It's a heroin offense.  But Billy's role was much

2    smaller, and he was really a replaceable piece in this -- in

3    Carter's business.  He would have found somebody else.  It

4    doesn't diminish the wrongfulness of Billy's behavior, but he

5    just was not a leader of this enterprise.

6         His past criminal history?  Obviously we all have to

7    be concerned, because he's had three prior convictions.  Those

8    convictions also involve what are street level dealer kind of

9    amounts.  .12 grams of cocaine. .27 grams of cocaine.  None of

10   them involve guns, violence, threats to anybody.  No leadership

11   activity.  He's never been a major player.  And so I think that

12   the balance here in terms of looking at his role in the offense,

13   and his criminal history, suggests a sentence along the lines

14   recommended by the parties.  I do think 3-and-a-half years is

15   sufficient.

16        In terms of the personal characteristics, Your Honor,

17   about Mr. Robinson?  He's a little bit of a mystery to me.  He's

18   just a very likable individual.  He's clearly -- he's good with

19   people.  He's relaxed.  He's easy going.  In talking with family

20   members, people seem to enjoy his company.  His kids love him.

21        But he hasn't done much.  He does have plans for the

22   future, which I think is a reason to be optimistic.  He has

23   plans to move with his fiancee to Alabama.  I think it would be

24   good for him to get away with his associations that he has in

25   the Milwaukee area.  He has goals in terms of obtaining some

1  vocational training and some treatment.  When we look at the

2  PSR, it's surprising how little programming that Mr. Robinson

3  for his contacts with the criminal justice system has ever

4  received.  That doesn't take the blame off his shoulders.  It's

5  just -- it's surprising that he hasn't had vocational training

6  and other programs here.

7        He had some drug treatment in the prison, but there's

8  a recommendation for follow-up, and then no follow-up took

9  place.  I do think his marijuana abuse has probably been a

10 significant factor in who he is and why his personal growth has

11 been somewhat stunted.  And I think he would benefit from the

12 RDAP program.

13       So Judge, in terms of an appropriate sentence, the

14 parties are not far apart.  I do think when we look at

15 sufficient but not greater than necessary, 3-and-a-half years

16 would fit the bill, given the fact that Billy was a bit player

17 in this enterprise, and that he's never been a person who's been

18 engaged in violence or guns in his life.  So I would ask the

19 Court to impose 3-and-a-half years.  And also a recommendation

20 that that institution be a place as close as possible to the

21 Eastern District of Wisconsin.

22       THE COURT:  Okay.  Mr. Robinson, you have a right to

23 speak.  Anything that you want to say before the Court passes

24 sentence?

25       THE DEFENDANT:  I've got this letter I would like to

1  address the Court with, saying that I accept full

2  responsibilities for my actions.  I made a lot of bad choices in

3  my life, and I have to work on becoming a better man and father.

4  Changes will be made in my life, and I plan to seek help.  I

5  have children that look up to me, and thinks that I'm a great

6  Dad.  I want to be a good role model for my kids, and I know I'm

7  not the first, but I want the best for my children.

8         My goals are to be more responsible and get a job.

9  Surround myself around positive people and do positive things.

10  I have a family that loves me and cares about me a lot, and I

11  don't want to lose them.  And life is what you make out of it,

12  so I have to make the right choices in life to achieve my goals.

13  And that's pretty much what I got here, sir.

14         THE COURT:  All right.  Well, the Court has to, as

15  indicated, look at the nature and circumstances of the offense,

16  and then the history and characteristics of the Defendant, and

17  then to render a disposition not more than necessary to achieve

18  what are the goals of both the guidelines and the Statute.  And

19  that is to reflect the seriousness of the offense, promote

20  respect for the law, create a just punishment, provide adequate

21  deterrence, and protect the public from further crimes.

22         The thing that surfaces here is that last goal,

23  protect the public from further crimes.  And the Court will

24  discuss that in more detail as I get to the second standard, the

25  history and characteristics of the Defendant.  But we take up

1    the first one first, the nature and circumstances of the

2    offense.  This is a distribution.  Travel to facilitate the

3    distribution of heroin.  Two counts.  The Court could go on for

4    hours.  And personal experiences, people that I know.  And this

5    is, of course, so prevalent that it impacts all levels and

6    strata of society.  And it's heroin, which is the worst drug

7    that you can probably put out onto the street.  People could

8    argue about methamphetamines and other things that rot people's

9    teeth and are just as addictive.  But the point is that heroin

10   is the drug of choice for people who graduated to the ultimate

11   high.  And it is creating destruction.

12           And Mr. Robinson, your community, 28th Street, those

13   environments.  I mean, 2700, 28th Street where your Mom used to

14   live -- I believe that's where you were living when this offense

15   occurred.  And, of course, Martin was living on the 3100 block I

16   think near Burleigh on 28th Street.  I used to date a girl that

17   lived on 24th Street and Locust when I was in college.  I'd go

18   into that neighborhood.  And she lived in an upper duplex.  And

19   I could do that.  And it was becoming a mixed neighborhood at

20   the time, and I could do that without any fear of getting

21   jacked, or shot, or anything.  And now, years later, that whole

22   neighborhood has changed.  And this activity is probably the

23   reason for it.  Drugs everywhere.  You know, Mr. Lipscomb has

24   just indicated, what are we going to do to keep this guy from

25   this street level dealing that he's been doing since age 14?

1  And why do I say that?  Well, because at age 14 you started --

2  according to this presentence report -- using marijuana.  And

3  people say well, that's no big deal.  But when you use

4  marijuana, it ain't free.  You've got to buy it from someone.

5  So you're facilitating a deal.  And that just perpetuates the

6  whole thing.  And this presentence report -- although there is a

7  disagreement as to the amount spent -- presentence report says

8  50 to $60 per day.  But you said 50 to $60 a week.

9          The point is that's been a constant criminal

10  involvement since age 14.  And I'm not talking about -- and

11  that's just the marijuana use.  And that, of course, leads to

12  involvement in other things like retail thefts.  And you were

13  put out at Ethan Allen.  Held over at Ethan Allen.  Got into

14  some trouble there.  Incarcerated.  Operating stolen auto -- or

15  involved in a stolen auto.  And that goes up.

16          And finally -- and that's another thing.  Chicago.  I

17  looked at these dispositions that were rendered in Chicago.

18  That must be a revolving door criminal justice system down

19  there.  I mean, probation back in '12 for possession of

20  controlled substance with intent to deliver heroin?  Two years?

21  I think that's what it was.  Isn't that right, Mr. Dragolovich?

22          MR. DRAGOLOVICH:  Yes, I believe so.

23          THE COURT:  2012, age 32, with this record he gets two

24  years probation for dealing heroin.  That to me is just beyond

25  belief.  Now, I'm not going to punish you because of what they

1    didn't do down in Chicago.  But the point is, this has hurt you,

2    because you apparently have this idea that you don't have to

3    work.  You can continue doing what you're doing.  And now you're

4    35 years old.  21 years later, still doing the marijuana.

5    Haven't had a job in your life.  And the only positive I can see

6    here is that you've got a supportive family.  And that your

7    siblings aren't involved in any antisocial behavior.  At least

8    what I can tell from the presentence report.

9          And Mr. Albee, your attorney, is one of the best.  I

10   mean, he's made the arguments that, you know, you're a bit

11   player.  Hanging out with Carter, your cousin.  And that's a bad

12   deal.  But Carter knew who to go to when he dropped DuVergey.

13   When she was using up too much of the heroin that she was

14   supposed to be selling and transporting.  He went right to his

15   cousin.  Because he knew, based upon what you've been doing your

16   whole life, Mr. Robinson, that he could count on you.

17         And that -- that's why the Court emphasizes the last

18   one, protection of the public.  You told me you want to take

19   full responsibility.  You should.  Everybody is responsible for

20   their own behavior.  All of this stuff, this was -- this offense

21   was committed while he was on supervision, right?  For that

22   offense -- another possession charge?

23              MR. DRAGOLOVICH:  Yes.

24              THE COURT:  That's the Chicago thing?

25              MR. DRAGOLOVICH:  Yes.  And the Milwaukee one as well.

1           THE COURT:  And the Milwaukee one as well.  So

2      constant contact, escape from prison, fugitive for two years.  I

3      mean, I haven't seen a record like this in a long time, where

4      it's just a total disregard.  I don't care how nice you are.

5      How much your family loves you.  I mean, my family loves me,

6      too.  But when I stepped out of line, they dealt with me.  They

7      didn't love me so much.  In fact, it's because they loved me

8      that they dealt with me.

9           And I'll bet you -- and I was here in '67.  I was

10     waiting to go to Vietnam in '68 -- '67.  And I was going to go

11     to Vietnam, and I had a short leave here in Milwaukee.  You know

12     what happened in '67?  That was -- you were born 12 years later,

13     Mr. Robinson.  '67 we had huge riots in this city.  Not unlike

14     what happened in Baltimore this week.  Had to call out the

15     National Guard.  Mayor Maier had to put a curfew on the city.

16     And you know what?  I couldn't even get to the airport to go to

17     a combat zone.  And if we had something like this in this city

18     today?  With this pathology that we've got set in these

19     neighborhoods?  The same thing is going to happen here.  If I

20     was the Mayor, if I was the Chief of Police, I'd be watching for

21     that.  Because this is a -- this bespeaks total lack of

22     discipline, self -- well, responsibility.  Self responsibility.

23     Self direction.  It's lacking.  And any excuse -- and, you know,

24     you didn't even get your H.S.E.D. when you were in prison the

25     last time.  When you got those -- got tagged when you were 23

1    back in '03.  That's the only time you really spent, those

2    6-and-a-half years.  And I'm being asked to give less time now?

3    That's not going to happen.  Because protection of the public is

4    key here, based upon my analysis.

5          Your attitude is negative.  Personality is negative,

6    based upon your behavior.  The only positive, as I indicated, is

7    your family.  You've got 13 other arrests besides all of these

8    other crimes.  You've got, what?  Five kids now by four

9    different women.  You're going to go to Alabama with your fiance

10   because you say you want to take your kids there, lead a

11   prosocial lifestyle, and be a role model?  But then you've got,

12   what?  A kid in Chicago, and two in Milwaukee here, right?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  What about them?  Are they going to go to

15   Alabama with you?  Whose Momma is going to raise those people by

16   themselves?  Now I'm putting my finger on the real problem here.

17   And I'm not going to go deeply into that, because I can speak

18   for a long time on that, also.  But I can't give you the same

19   thing that DuVergey got.  She was -- she had a criminal history

20   category of one.  And she was -- she was someone who had

21   sympathy because she was, indeed, captured by, first, cocaine.

22   And then she married a guy who was using heroin, he introduced

23   her to it, and then he died, and now she's hooked.  And heroin

24   users, they will do almost anything to get heroin.  Almost

25   anything.  They've got a lifelong desire for it.  And so they

1  have to get up every day and say oh, God, I really could use a

2  fix.  But if they don't have the willpower to say -- to think

3  and see that they're going to go right back to the depths that

4  they came from -- and that's a burden.  That's a lifelong

5  burden, that just one shot of heroin can put on somebody.

6            So I'm going to give you 3-and-a-half years, but on

7  both counts, consecutive.  Because you deserve a little more

8  time than DuVergey.  And that addresses the protection of the

9  public.  It provides adequate deterrence.  And it is a just

10 punishment.  So it meets those three goals.  And it also

11 reflects the seriousness of the offense.  We've got three goals

12 here that should be observed and addressed in this sentencing.

13 So the Court is doing that.

14           I'm going to place you on supervised release for a

15 period of 3 years on both.  That will be concurrent.  Set the

16 usual conditions of supervised release, which are necessary.

17 Have to report to the Probation Office in the District in which

18 you're released within 72 hours.  Can't commit any State,

19 Federal, or local crimes.  You can't possess any controlled

20 substances illegally.  Have to engage in 6 urinalyses tests per

21 month.  Residential or outpatient treatment for drug or alcohol

22 abuse.  The Court will recommend the drug treatment program.

23 Obviously the discussion here is that -- and since the weapons

24 charge -- he should be eligible for that, is that correct?

25           MR. DRAGOLOVICH:  Yes.

 1          THE COURT:  Yeah.  You get involved in this program --

 2   and you indicated that you want to take advantage of those

 3   programs, Mr. Robinson.  You get involved in that program, and

 4   pass it, that will shorten your sentence when you're in the

 5   prison.  Don't blow it off, like you did the H.S.E.D. when you

 6   were sentenced back in 2003.  I don't know why you didn't finish

 7   it.  I'm not going to be critical of that, but take advantage of

 8   the programs.

 9          All right.  We've got -- the Court has looked at the

10   Defendant's financials.  I can't -- filed one income tax

11   return -- although there's a record of three.  But then he says

12   that someone may have been using his identity and information,

13   which the Court sees as absolutely possible, having sentenced a

14   variety of people for doing that very same thing.  Filing income

15   tax returns on behalf of people that -- whose identity has been

16   stolen.

17          The Court has received the addendum to the presentence

18   report.  We've been dealing with Judge Posner's requirements

19   that -- I've stated the mandatory conditions which are obvious.

20   The reasons for them are obvious.  The firearms -- no firearms

21   or dangerous weapons.  Drug treatment program.  Reporting.  No

22   crimes.  The Court has to set conditions now that -- because of

23   the Defendant's absconding, can't leave the District without

24   permission of the Probation Officer or Court.  Shall answer

25   truthfully all inquiries by the Probation Officer, subject to

1  the First Amendment right against self incrimination, and follow

2  the instructions of the Probation Officer.  Shall use his best

3  efforts to support his dependents.  Cooperate with child support

4  enforcement.  Although there haven't been any orders, according

5  to the presentence report.  He shall use his best efforts to

6  find and hold lawful employment unless excused by the Probation

7  Officer for schooling, training, or other acceptable conditions.

8  And those include child care, elder care, disability, age or

9  serious health condition and others related thereto.  Consistent

10 with U.S. vs. Siegel and the need to reduce recidivism.

11        The Defendant shall notify the Probation Officer at

12 least 10 days prior to any change in his residence or

13 employment.  That does not mean changes in the condition of an

14 employment.  Just changes in employers.  And when such

15 notification is not possible, the Probation Officer shall be

16 notified within 72 hours of the change.

17        The Court will also, because of the Defendant's

18 history, not knowingly go to places or enter buildings where

19 controlled substances are unlawfully sold, used, distributed, or

20 administered.  And he shall use his best efforts not to

21 associate with any persons known by him to be engaged or

22 planning to be engaged in criminal activity.  And shall not

23 associate with any person known by him to be a felon, absent

24 permission to do so by the Probation Officer.  And associate as

25 used here means reside, socialize, meet, communicate, or

1   otherwise interact with such person.  The Defendant shall permit

2   a Probation Officer to visit him at reasonable times at home or

3   elsewhere, and shall permit confiscation of any contraband

4   observed in plain view by the Probation Officer.

5           There will be a notification of any arrest within

6   72 hours or questioning by a law enforcement Officer.  In

7   addition, the Defendant shall not enter any agreement to act as

8   an informer or a special agent of a law enforcement agency

9   without the permission of the Court.  And those are the

10  conditions of probation.

11          The Court is waiving the fine as indicated in this

12  case.  And the Court will impose the $100 mandatory special

13  assessment, which is payable in Room 362 of the Clerk of Court's

14  Office.  The Court will accept the Defendant's request for a

15  facility as close to home as possible.  And so the Court is

16  going to put that in this judgment, that you be placed at a

17  facility as close to home as possible, Mr. Robinson, so that

18  your family will have an opportunity to visit.

19          The Court having rendered its disposition, is there

20  any question as to the Court's disposition from the Government?

21          MR. LIPSCOMB:  No, Judge.  Thank you.

22          THE COURT:  Any from the defense, Mr. Albee?

23          MR. ALBEE:  No, Judge.

24          THE COURT:  Mr. Robinson, I have to -- you can appeal

25  this case.  You've got 14 days to appeal it.  If you can't

1  afford an appeal, a notice will be filed on your behalf by the

2  Clerk of Courts.  And Mr. Albee, you will file a Notice of

3  Appeal on Mr. Robinson's behalf if he decides to do that?

4           MR. ALBEE:  Yes, Your Honor.

5           THE COURT:  Anything else to come before the Court?

6           MR. LIPSCOMB:  I don't believe so, Judge.

7           MR. ALBEE:  No, Judge.

8           THE COURT:  The Court will stand in recess until the

9  next case.

10                          *     *     *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF WISCONSIN

3

4           I, HEIDI J. TRAPP, Official Court Reporter for the

5    United States District Court, Eastern District of Wisconsin, do

6    hereby certify that I reported the foregoing Transcript of

7    Proceedings; that the same is true and correct as reflected by

8    my original machine shorthand notes taken at said time and place

9    before the Hon. Rudolph T. Randa.

10

11                          _____

                            Official Court Reporter
12                          United States District Court

13

14   Dated at Milwaukee, Wisconsin,

15   this 18th day of June, 2015.

16

17

18

19

20

21

22

23

24

25